UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARL VICTOR COLEMAN, TDCJ #00485674, | § § § | |
| Petitioner, VS. | § § § | CIVIL ACTION NO. H-19-2041 |
| STATE OF TEXAS, *et al*, | § § § | |
| Respondents. | § | |

## **MEMORANDUM AND ORDER**

Carl Victor Coleman, a parolee under the supervision of the Texas Board of Pardons and Paroles, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the modifications of his parole conditions following a revocation hearing. The petition will be dismissed for the reasons that follow.

**I.    BACKGROUND**

On June 16, 1988, Coleman was convicted of unauthorized use of a motor vehicle after a jury trial and was sentenced to 45 years' imprisonment.[1] Coleman does not challenge that judgment of conviction here. Instead, he challenges the requirements of his parole release in connection with a recent revocation hearing where the Board of Paroles and Pardons ("the Board") did not revoke his parole but imposed two additional conditions on his parole: electronic monitoring and treatment in an intermediate sanction facility ("ISF").[2]

In his federal petition, Coleman includes court records from his state application for habeas corpus challenging the imposition of the two conditions of parole. The state records include the records from his revocation hearing and an affidavit from Angela Nation, the Section

---

[1] Doc. No. 1 ("Petition") at 1.
[2] Doc. No. 1-1 at 5-6.

Director for Review and Release Processing of the TDCJ-Parole Division.[3] According to the records Coleman provides, he was released to parole on April 5, 2007.[4] At that time, he agreed to several conditions of parole, including that he would reside in a specified place as approved by his supervising parole officer.[5]

In his memorandum in support of the instant petition, Coleman alleges that in early February 2017, he contacted his parole officer, Officer Lovett, and told him that he was moving out of the approved residence because he felt threatened there.[6] Coleman alleges that Lovett "acquiesced" to his moving out of the home and documented the new address, visiting him at his new residence on February 9, 2017.[7]

The hearing record reveals that Officer Tamara Thorne Roberts ("Tamara"), who had replaced Lovett as Coleman's parole officer, tried to call Coleman on March 1, 2017 but could not reach him because his phone was disconnected.[8] She then called Leanders Johnson, the sponsor of the residence where Coleman was supposed to reside, who indicated that Coleman had moved out about a month before to a place on Old Spanish Trail in Houston, Texas.[9] When Tamara tried to locate Coleman and was unsuccessful, she issued a warrant for his arrest.[10] Construing Coleman's pleadings and memorandum of law liberally, he maintains that he is "actually innocent" of the parole violation because his former parole officer, Lovett, allowed him to move and his new parole officer did not follow Lovett's work product documenting the

---

[3] *See* Doc. No. 1-2 at 32-41.
[4] *Id.* at 33; Doc. No. 1-1 at 25.
[5] Doc. No. 1-1 at 25 ¶ 3.
[6] Doc. No. 2 at 1.
[7] *Id.* at 1-2.
[8] Doc. No. 1-2 at 2.
[9] *Id.*
[10] *Id.*

move.[11]

At the revocation hearing on May 23, 2017, Coleman was present and testified regarding his version of events.[12] Coleman objected to two documents, one signed by "Tamara Thorne" and the other signed by "Tamara Roberts," questioning whether they were two different people.[13] Parole Officer Anthony Carr ("Carr"), who was present at the hearing, testified that Tamara Roberts and Tamara Thorne are the same person and that Thorne is Tamara Roberts's maiden name; and the hearing officer overruled Coleman's objection.[14] Coleman asked Carr questions during Carr's testimony.[15] Coleman also testified, explaining that he left the halfway house in February because he did not feel safe there and that he had told Officer Lovett that he moved out.[16] Coleman testified that Lovett had reprimanded Coleman for changing his address without prior approval but stated that he understood why Coleman moved.[17] Coleman also testified that Lovett conducted a home visit at his new place on February 9, 2017.[18] Coleman testified that he forgot to report to the parole office on March 15, 2017 and did not do so until late March.[19] At that point, he was informed that there was a warrant for his arrest, and he was eventually arrested in Austin, Texas in April 2017.[20] After hearing all of the testimony, the hearing officer concluded that Coleman's version of events matched up with the documents, but that he changed his residence from Harris County to Travis County after March 1, 2017 without approval.[21] The hearing officer recommended that Coleman's parole not be revoked, but that two conditions,

---

[11] Petition at 5; Doc. No. 2 at 1-2.
[12] Doc. No. 1-3 ("Hearing Report") at 22.
[13] *Id.* at 25.
[14] *Id.*
[15] *Id.* at 27.
[16] *Id.* at 28.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*

electronic monitoring and ISF, be added to his parole conditions.[22] The Board voted not to revoke his parole but to add the recommended conditions.[23]

Coleman filed a state application of habeas corpus to challenge the imposition of the new conditions.[24] On June 6, 2018, the Texas Court of Criminal Appeals denied Coleman's application without written order.[25] Coleman filed this federal petition on May 30, 2019 to challenge the result of his revocation hearing and the imposition of the two additional conditions, attaching the hearing record along with pertinent documents from his state habeas application.[26] The Court has conducted the screening required by the federal rules and concludes that Coleman fails to state a claim for federal habeas relief.

## II.  STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter,* 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. For AEDPA to apply, a state court need not state its reasons for its denial, nor must it issue findings, nor need it specifically state that the adjudication was "on the merits." *Id.* at 98-99.

Coleman's claims were adjudicated on the merits by state courts. This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins,* 560

---

[22] *Id.* at 30.
[23] Doc. No. 1-1 at 31 (Hearing/Waiver Results).
[24] Doc. No. 1-1 at 2.
[25] Doc. No. 1-2 at 30 (Action Taken Sheet, WR-20,101-05).
[26] Petition and attachments thereto.

U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 562 U.S. at 102.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction. *Id.* (citation omitted); *see also Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

"Review under § 2254(d)(1) focuses on what a state court knew and did." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d

250, 255 (5th Cir.1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines,* 404 U.S. at 521.

III. **DISCUSSION**

A prisoner found guilty of committing an offense under Texas criminal law may be required to serve his entire sentence and has no right to be released before the sentence expiration date. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7 (1979). When the Board, at its discretion, releases a prisoner to parole, he remains under the Board's supervision and control until the expiration of his sentence. *Malchi v. Thaler,* 211 F.3d 953, 957 (5th Cir. 2000); *see also* TEX. CODE OF CRIM. P. Chap. 42A; TEX. GOV'T CODE § 508.221 (providing that the Board has authority to impose conditions on parolees). The liberty interests of a parolee are restricted, and he may be returned to prison without being afforded a full criminal trial with all of the protections made available to a criminal defendant who has not yet been convicted. *Hamilton v. Lyons,* 74 F.3d 99, 105 (5th Cir. 1996) (citing *Morrissey v. Brewer,* 406 U.S. 471, 480 (1972)). A state has an overwhelming interest in monitoring felons who have been conditionally released. *Morrissey,* 406 U.S. at 483.

In this case, the state habeas court made specific findings of fact and conclusions of law and found, among other things, that although Coleman had admitted that he was not living at the address specified in his parole supervision conditions, the hearing officer recommended conditions rather than revocation and the Board approved that recommendation.[27] The state habeas court concluded that the Board has the authority to impose the additional conditions and that the imposition of an electronic monitor requirement and treatment in an ISF are conditions lawfully imposed on Coleman.[28] The state court's determination that Coleman requires special

---

[27] *See* Doc. No. 1-2 at 19-20, ¶¶ 13-15 (Findings of Fact).
[28] *Id.* at 22, ¶¶ 1-3 (Conclusions of Law).

monitoring and placement in ISF is a factual assessment that is entitled to a presumption of correctness under the AEDPA. *See* 28 U.S.C. § 2254(e)(1). Further, the state habeas court concluded as a matter of law that Coleman had received all of the process that was due under *Morrissey*.[29]

A valid conviction extinguishes an offender's interest in being free from confinement during his sentence. *Greenholtz*, 442 U.S. at 7. A due process claim must establish that state or federal law has restored some portion of that interest by establishing particularized criteria that sufficiently limit corrections officials' discretion. *E.g., Vitek v. Jones*, 445 U.S. 480, 488–91 (1980); *see also Jackson v. Cain*, 864 F.2d 1235, 1250–52 (5th Cir.1989). Otherwise, the parolee must show that the challenged condition of parole "present[s] such a dramatic departure from the basic conditions of [the] parolee's sentence that the state must provide some procedural protections prior to its imposition." *Coleman v. Dretke*, 395 F.3d 216, 222 (5th Cir. 2004) (internal quotations marks omitted). To meet that standard, the condition must be one that is "qualitatively different from the punishment characteristically suffered by a person convicted of the crime, and which ha[s] stigmatizing consequences." *Id.* at 221 (internal quotation marks, brackets, and citation omitted).

As a convicted felon and former prison inmate, Coleman does not have many of the rights and privileges that a free citizen enjoys. *Morrissey*, 406 U.S. at 480; *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). His due process rights are not implicated by the imposition of conditions that are not "atypical and significant" departures from ordinary restrictions placed on other felons. *See Sandin v O'Conner*, 115 S. Ct. 2293, 2300 (1995). The state habeas court determined that electronic monitoring and ISF are conditions that the Board has the authority under Texas law to impose, and that they were appropriately imposed here.

---

[29] Doc. No. 1-2 at 22, ¶ 4.

The conditions imposed on Coleman are not "atypical and significant" departures from ordinary restrictions placed on other felons, but even if they were, the state habeas court concluded that Coleman was afforded due process under *Morrissey* for any restriction on his liberty: he was provided notice and a hearing promptly after his arrest; he appeared at his hearing in front of a neutral hearing officer; he presented evidence, gave testimony, and had the opportunity to question the state's testimony; and he received a written explanation of the reasons and evidence supporting the decision. *See Morrissey*, 406 U.S. at 488-89 (holding that a parolee is entitled to a hearing where he has the opportunity to be heard and to show whether he is in violation of the conditions, where such hearing is promptly conducted after arrest with notification in writing of the alleged violation, disclosure of the evidence against him, the right to confront and cross-examine adverse witnesses, in front of a neutral hearing officer, with a written statement by the fact finder as to the evidence relied on and the reasons for the revocation).

Applying *Morrissey* to this record, the Court concludes that the state court's determination that Coleman received due process during the revocation hearing and that his additional parole conditions were lawfully imposed is not contrary to, or an unreasonable application of, Supreme Court precedent. Further, a review of the record reflects that the state court's factual determination was not unreasonable in light of the evidence presented. Accordingly, Coleman fails to show his entitlement to federal habeas relief.

Federal courts are authorized to dismiss federal habeas petitions without ordering a response where it plainly appears that the petitioner is not entitled to relief. 28 U.S.C. § 2243; Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. Therefore, this action will be dismissed because it plainly appears that Coleman is not entitled to habeas relief.

## IV. CERTIFICATE of APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. *See* 28 U.S.C. § 2253. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard*, 542 U.S. at 282 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For reasons set forth above, this court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner states a valid claim for relief. Therefore, a certificate of appealability will not issue.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The petition for habeas corpus is **DISMISSED** with prejudice.

2. Petitioner's motions to amend (Doc. No. 3 & 4), adding the proper respondent, are **GRANTED**.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, this 6th day of August, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE